UNITED STATES of America, Appellee,

v.

Mustafa A. ABDULLAH, Appellant.

Nos. 90–1615, 90–1922.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 30, 1991.
Decided Oct. 16, 1991.

Timothy Stein, Kansas City, Mo., for appellant.

Peter Ossorio, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before McMILLIAN, BOWMAN, and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Mustafa Abdullah negotiated a written plea agreement and entered a plea of guilty to one count of conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and to one count of using a firearm in the commission of a felony in violation of 18 U.S.C. § 924(c). Before sentencing, Abdullah moved to withdraw his pleas. The district court denied the motion as meritless. On appeal, Abdullah asserts that the district court violated Fed.R.Crim.P. 11 in accepting his guilty pleas; that the district court abused its discretion under Fed.R.Crim.P. 32 in denying his motion to withdraw his pleas; and that the federal sentencing guidelines violate his Fifth Amendment right to due process. We affirm.

## I. BACKGROUND

On August 17, 1989, a federal grand jury charged Abdullah, along with four other co-conspirators, in an eighteen-count indictment. Abdullah initially entered a plea of not guilty to all eight counts against him. He later entered into a written plea agreement wherein he agreed to plead guilty to count one, conspiracy to distribute cocaine and cocaine base, and count eighteen, use of a firearm in the commission of a felony. In return, the government agreed to dismiss the other six counts.

In compliance with the plea agreement, on September 29, 1989, Abdullah changed his pleas on counts one and eighteen from not guilty to guilty. The district court held a Rule 11 hearing. At the hearing, the court questioned Abdullah and established that he had read, understood, and voluntarily signed the plea agreement; understood the charges against him; and voluntarily wished to change his plea because he was in fact guilty. Based on Abdullah's assurances, the district court concluded that his guilty pleas were voluntary and knowledgeable and, therefore, accepted them.

On January 14, 1990, Abdullah sent the district court a letter seeking to withdraw his guilty pleas. Abdullah alleged that he did not understand the technicalities of the agreement, that the elements of conspiracy were too broad for the offense he had committed, and that the government had improperly included facts related to the dismissed counts in the presentence report. On January 28, 1990, Abdullah sent an additional letter to the district court, alleging ineffective assistance of counsel.

The district court held an evidentiary hearing concerning Abdullah's motion to withdraw his guilty pleas on March 1, 1990. The only evidence Abdullah offered in support of his motion was his own testimony. Rejecting Abdullah's credibility and finding no support for his claims, the court overruled Abdullah's motion.

On March 2, 1990, the district court conducted a sentencing hearing. At the hearing, Abdullah challenged the accuracy of certain facts and conclusions contained in the presentence report, particularly the report's conclusion that he was the leader of the conspiracy to distribute cocaine. In deciding the appropriate offense level for the conspiracy count, however, the court agreed with the report's basic conclusions. The court initially found that the conspiracy involved more than 500 grams of cocaine base resulting in a base level of 36. The court then found that contrary to Abdullah's assertions, he was the leader of the conspiracy, which involved five persons, and increased his offense level by four points. Based on the adjusted offense level of 40 and a criminal history category of I, the court imposed a sentence of 365 months. The court also imposed a mandatory 60 month consecutive sentence on the firearm count. This appeal followed.

## II. DISCUSSION

### A. Rule 11

■ Abdullah argues that the district court committed various violations of Rule 11. First, he claims that the district court failed to establish a factual basis for his guilty pleas. *See* Fed.R.Crim.P. 11(f). According to Abdullah, the district court's only attempts to establish a factual basis for his guilt on either count involved two short exchanges with the prosecution and defense attorneys where the court simply asked each attorney whether the government could offer substantial evidence of Abdullah's guilt were the case to go to trial. On both occasions, each attorney indicated that the government could do so. Change of Plea Transcript at 8, 20–21. Abdullah argues that such generalized inquiry is insufficient to satisfy the requirements of Rule 11. Abdullah, however, ignores other portions of the Rule 11 hearing, which establish a clear factual basis for his guilty pleas.

Contrary to Abdullah's portrayal of the Rule 11 hearing, the district court reviewed specific factual allegations supporting the guilty pleas. The court asked the prosecutor to summarize the main provisions of the plea agreement. Paragraph six of the agreement contained the essential facts supporting the guilty pleas:

Between March 29, 1989 and July 17, 1989, in Kansas City, Missouri, the defendant had an informal agreement with at least one other person who was not an informant or agent of the government to distribute cocaine and cocaine base, that is "crack." The defendant personally sold cocaine and cocaine base during the period specified above and delivered or caused to be delivered cocaine base to other persons with the understanding that they would sell all or part of the cocaine base. On July 17, 1989, a Sturm Ruger, Super Blackhawk .44 magnum caliber stainless steel revolver, serial number 84–82945, loaded with five cartridges, was seized during the execution of a search warrant in Apartment 542, 10519 East 43rd Street, Kansas City, Missouri. Defendant and Phenique L. Garner were the only persons in the apartment at the time the search warrant was executed. Three more rounds of .44 magnum ammunition were found in a black briefcase found on the coffee table in the living room. Also in the briefcase were miscellaneous cards, papers, receipts and records, some of which identified the defendant or purported to bear his signature. Also seized in Apartment 542 was over 745 grams of cocaine hydrochloride and two separate plastic bags containing over 13 grams and two grams, respectively, of cocaine base; as well as a clear plastic envelope that contained three baggies containing a total of 40 grams of cocaine base.

Plea Agreement ¶ 6. Although the prosecutor did not recite paragraph six's contents, he did state that both Abdullah and his attorney agreed to the paragraph's accuracy. Change of Plea Transcript at 17–18. The Court eventually asked Abdullah if he disagreed with any part of the prosecutor's summary and Abdullah responded that he did not. *Id.* at 19. Because the plea agreement's description of the essential facts underlying the charges supports a finding of guilt, we hold that Abdullah's acknowledgment of the accuracy of the plea agreement's provisions satisfies Rule 11's requirement that the court establish a factual basis for the defendant's guilt.

■ Second, Abdullah argues that the district court violated Rule 11 by failing to insure that he understood the charges to which he pleaded guilty. *See* Fed. R.Crim.P. 11(c)(1). Abdullah claims he did not understand either the conspiracy or the firearm charge because he received confusing and incorrect explanations of both.

The district court went to great lengths to insure that Abdullah understood the charges against him. The court began by reading count one of the indictment and asking Abdullah if he understood the conspiracy charge. Change of Plea Transcript at 9. When Abdullah stated that the charge was "a little vague," the court clarified it as follows:

THE COURT: .... That you all, being the defendants, did knowingly and intentionally conspire and agree with each other and with others unknown to the Grand Jury to distribute controlled substances, namely cocaine and also a mixture and substance containing cocaine base, which is known as crack. That's basically the charge against you. Now, I might explain that you don't have to have gotten into any written agreement with them or—nor do you have to have talked to all of them and agreed to go on with any specific plan or anything like that. It's just simply that you and at least one or more of those others were working together to distribute some amount, some appreciable amount, of cocaine and cocaine base, crack.

*Id.* at 10–11. After listening to the court's explanation of the conspiracy charge, Abdullah stated without reservation that he understood the nature of the charge. *Id.* at 11.

■ The court proceeded to review the firearm charge in the same manner. After reading count eighteen of the indictment, the court explained the charge as follows:

THE COURT: .... [T]hat you in affect [sic] possessed and used a firearm, this .44 magnum caliber revolver that's described, in—during and at the time the conspiracy was going on in relation to the offense of conspiracy to distribute cocaine and cocaine base as alleged in

Count 1. And also as alleged in Count 17.

*Id.* at 12–13. The court then asked Abdullah if he understood the charge. When Abdullah stated that he still found the charge vague, the prosecutor offered the following additional explanation:

> MR. OSSORIO: .... [U]nder the case law as I understand it, at least in this district, used can include merely having available for use a weapon. And so what the Government is alleging that this weapon that I believe with I believe it was five rounds was in the apartment and was available for use in furthering the conspiracy in any way and also—or also available for use in regard to possessing with intent to distribute the cocaine and crack cocaine that was in the apartment. The Government is not alleging that you had that weapon, that you waived it around, that you pointed it at anyone or anything like that. We're not charging that and so the charge merely is that that weapon was there available for your use to help out in the drug trafficking operation.

*Id.* at 13–14. The defense counsel also helped to explain the charge to Abdullah:

> MR. NATION: ... if you possess a gun for the reason of protecting yourself because you're selling drugs or protecting drugs or money that may be where you're staying.... [I]f that's the case, that you did have this gun for the purpose of protecting yourself, your drugs, or your money from others—
>
> THE COURT: Your drug money.
>
> MR. NATION: Your drug money, yes. That's a violation of the law....

*Id.* at 14. After these explanations, the court again asked Abdullah if he understood the nature of the firearm charge and this time, Abdullah responded that he did. *Id.* at 15.

 We find nothing improper in either the explanation of the conspiracy charge or the firearm charge. It is well settled law in this circuit that the government does not need to prove an overt act in furtherance of a conspiracy under 21 U.S.C. § 846. *E.g., United States v. Davis,* 882 F.2d 1334, 1342 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990); *United States v. Covos,* 872 F.2d 805, 809–10 (8th Cir.), *cert. denied,* 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989); *see* Model Criminal Jury Instructions for the District Courts of the Eighth Circuit § 6.21.846 (rev. ed. 1989). Without the overt element requirement, all that the government must prove is the existence of an agreement to commit a crime. *See, e.g., United States v. Powell,* 853 F.2d 601, 604 (8th Cir.1988); *United States v. Campbell,* 848 F.2d 846, 851 (8th Cir.1988). Moreover, this agreement does not need to be explicit, but instead may be tacit. *E.g., Powell,* 853 F.2d at 604; *Campbell,* 848 F.2d at 851. Finally, the defendant does not need to know every detail or part of the conspiracy. *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256–57, 92 L.Ed. 154 (1947). The district court's explanation of the conspiracy charge is fully consistent with these decisions.

The combined explanation of the firearm charge is also consistent with the law of this circuit. In *United States v. LaGuardia,* 774 F.2d 317 (8th Cir.1985), this court held that for the purposes of 18 U.S.C. § 924(c)(1), "presence and availability in light of the evident need demonstrates [sic] the use of the firearm to commit the felony," *id.* at 321; *see* Model Criminal Jury Instruction for the District Courts of the Eighth Circuit at § 6.18.924. Despite Abdullah's argument to the contrary, the *LaGuardia* standard remains the law of this circuit. *See United States v. Curry,* 911 F.2d 72, 79–80 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).[1] We find no inconsistency between the combined explanation of the firearm charge and the *LaGuardia* standard.

---

1. Abdullah argues that this court's decision in *United States v. Lyman,* 892 F.2d 751 (8th Cir. 1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990), adopted a more restrictive definition of "use" under § 924(c)(1). This interpretation of *Lyman,* however, was expressly rejected in *Curry,* 911 F.2d at 79–80.

■ Because the explanations of both the conspiracy and the firearm charges were proper, Abdullah's claim that the district court failed to establish that he understood the charges to which he pleaded guilty is meritless. Abdullah's express acknowledgment that he understood each charge as properly explained is sufficient to satisfy Rule 11(c)(1). *See United States v. Young*, 927 F.2d 1060, 1063–64 (8th Cir.), *petition for cert. filed*, (U.S. Aug. 7, 1991) (No. 91–5406); *United States v. Harvey*, 850 F.2d 388, 396 (8th Cir.1988).

Third, Abdullah claims that the district court failed to inform him of the direct consequences of his guilty pleas as required under Rule 11. *See* Fed.R.Crim.P. 11(c)(1). Abdullah contends that the court committed error in failing to disclose that the cocaine he distributed would be combined with the cocaine distributed by his co-conspirators to determine his base offense level, and that his offense level would be raised for his role in the offense as the leader of the conspiracy.

■ We initially note that Abdullah's claimed lack of knowledge regarding both his base offense level and potential adjusted offense level for the conspiracy charge is dubious.[2] Regardless, even if accepted at face value, the claim is meritless. In *Young*, this court held that failure to disclose the various factors that might influence the defendant's offense level for sentencing purposes does not violate Rule 11. *Young*, 927 F.2d at 1064; *see also United States v. Thomas*, 894 F.2d 996, 997 (8th Cir.) (no need to inform defendant of applicable guideline range at Rule 11 hearing), *cert. denied*, —— U.S. ——, 110 S.Ct. 1935, 109 L.Ed.2d 298 (1990).

## B. Rule 32

■ Abdullah also contends that the district court abused its discretion in denying his motion to withdraw his guilty pleas. A defendant has no absolute right under Rule 32 to withdraw a guilty plea before sentencing, instead a defendant must show a fair and just ground for withdrawal. Fed.R.Crim.P. 32(d) advisory committee note; *see, e.g., United States v. Boyd*, 610 F.2d 521, 524 (8th Cir.1979), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). In *United States v. Boone*, 869 F.2d 1089 (8th Cir.), *cert. denied*, 493 U.S. 822, 110 S.Ct. 81, 107 L.Ed.2d 47 (1989), this court outlined various factors that the district court should consider in determining whether to grant a motion to withdraw a guilty plea before sentencing:

> (1) whether defendant established a fair and just reason to withdraw his plea; (2) whether defendant asserts his legal innocence of the charge; (3) the length of time between the guilty plea and the motion to withdraw; and (4) if the defendant established a fair and just reason for withdrawal, whether the government will be prejudiced.

*Id.* at 1091–92. The district court's decision whether to grant the motion is reversible only for abuse of discretion. *E.g., Boyd*, 610 F.2d at 524. Although the district court did not specifically refer to *Boone*, it expressly held that all of Abdullah's justifications for withdrawal were meritless. Abdullah asserts that the district court abused its discretion simply because it did not analyze each factor listed in *Boone*. We are unwilling to adopt such a formalistic rule. If the defendant does not present a fair and just reason for withdrawal of a guilty plea, no need exists for the district court to examine the other *Boone* factors.

■ Contrary to his assertions, Abdullah presents no fair and just reason for granting his motion to withdraw. In his

---

**2.** The written plea agreement specifically addressed the appropriate offense level for the conspiracy charge. The parties expressly stipulated that the base level for the conspiracy count was "36 (500 or more grams)." Plea Agreement ¶ 4. The parties further stipulated that the victim-related adjustments and the obstruction adjustment were zero, but that the "parties do not agree as to [the role in the offense adjustment] and understand that it will be determined by the Court." *Id.* ¶ 5. Thus, as to the final adjusted offense level, the plea agreement stated that the "parties do not agree as to this element because they are not in agreement as to [the role in the offense adjustment.]" *Id.* These terms, furthermore, were explicitly reviewed during the Rule 11 hearing. Change of Plea Transcript at 17.

brief, Abdullah raises five main justifications. We have already addressed and rejected two, that Abdullah did not understand the nature of the charges against him and that the court failed to disclose the direct consequences of his sentence. Two other justifications, that the court did not inform Abdullah of his right to confront witnesses against him and that the government did not provide Abdullah an opportunity to examine its case file, are also easily dismissed. During the Rule 11 hearing, the court expressly informed Abdullah of his right to have his attorney cross-examine witnesses and received confirmation from Abdullah's attorney that the government had opened its case file. Change of Plea Transcript at 5, 21.

Abdullah's fifth justification is that his guilty pleas were involuntary because he made it under duress. The main thrust of Abdullah's claim is that he was denied effective assistance of counsel because his attorney pressured him into pleading guilty. On two separate occasions at the Rule 11 hearing, however, Abdullah stated that he was completely satisfied with the performance of his counsel and never indicated in any manner that he was under pressure from counsel to plead guilty. *Id.* at 22, 24–25. Abdullah's failure to assert any objections to counsel's performance at the Rule 11 hearing refutes any claim of ineffective assistance of counsel as a basis for withdrawing his pleas. *United States v. Rogers,* 939 F.2d 591, 593–94 (8th Cir. 1991). We have reviewed the record and find no support for ineffective assistance of counsel under the standard established in *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). Because we agree with the district court that Abdullah's justifications for withdrawal of his pleas are meritless, the court's failure to examine every *Boone* factor presents no error.

### C. Due Process

■ Abdullah's final claim is that the sentencing guidelines violate his Fifth Amendment right to due process on two grounds. His first challenge is that the guidelines fail to provide a standard of proof for the district court to apply in finding facts upon which a sentence is based and that the district court in this case failed to apply any express standard. This court already has held that no particular standard of proof for fact-finding is required at the sentencing phase. The sentencing judge only needs to make findings sufficient to provide for a meaningful appeal. *United States v. Culver,* 929 F.2d 389, 392 (8th Cir.1991); *United States v. Luster,* 896 F.2d 1122, 1129 (8th Cir.1990). In making its findings, the district court may rely on information contained in the presentence report even if the defendant alleges that the information is inaccurate. *United States v. Johnson,* 888 F.2d 1255, 1256–57 (8th Cir.1989). Unless clearly erroneous, we must affirm the district court's decision. 18 U.S.C.A. § 3742(e) (West Supp.1991); *accord, e.g., United States v. Contreras,* 927 F.2d 1058, 1059 (8th Cir. 1991); *United States v. Olesen,* 920 F.2d 538, 543 (8th Cir.1990).

■ We have reviewed the record carefully and find that more than sufficient evidence exists to support the sentencing court's conclusions. Not only did the record demonstrate that the conspiracy involved at least 919.03 grams of cocaine base (after converting cocaine powder into base), Sentencing Transcript, March 2, 1991, at 71, but Abdullah stipulated in the Plea Agreement that the amount of cocaine base involved in the conspiracy exceeded 500 grams, Plea Agreement ¶ 4. The only real dispute at sentencing concerned Abdullah's role in the offense. *See id.* ¶ 5. The district court reviewed the presentence investigation report's detailed description of Abdullah's role in the conspiracy, which was mainly based on statements made by confidential informants. *See* Sentencing Transcript at 6–19. After allowing Abdullah an opportunity to question both government counsel and the case agent concerning the report, the district court reasonably concluded that the informants' statements were sufficiently credible to support a finding that Abdullah was the leader of the conspiracy. *Id.* at 60–61. Because the district court's findings were not clearly erro-

neous, we find no error in the court's failure to indicate expressly what standard of proof it applied.

■ Abdullah's second constitutional challenge to the guidelines is that the guidelines unduly limit the sentencing judge's discretion and improperly grant discretion to the prosecutor. This court, however, has already expressly rejected such general challenges. *E.g., United States v. Weaver,* 906 F.2d 359, 360 (8th Cir.1990); *United States v. Brittman,* 872 F.2d 827, 828 (8th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989). Moreover, after reviewing the record, we find no support for an individualized claim that Abdullah's due process rights were violated.

## III. CONCLUSION

We have considered Abdullah's other arguments on appeal and find them to be without merit. For the reasons stated above, the judgment of the district court is affirmed.